UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ERIN FEINBERG,

                                Plaintiff,

          -against-

JONATHAN BENDIS,

                                Defendant.
--------------------------------------------------------------X

## COMPLAINT

Plaintiff Erin Feinberg ("Plaintiff"), by her attorneys, Poler Legal LLC, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff and Defendant Jonathan Bendis ("Defendant") met in 2008 and over the next ten years both contributed to the development of a yet to be released documentary film.

2. Through their joint work on this project, in or about 2008 Plaintiff and Defendant formed a de facto partnership.

3. They also created film footage. For some of this footage, Plaintiff and Defendant are joint authors and, as a result, either of them can use such footage without permission from the other. For other footage, Plaintiff is the sole author.

4. Plaintiff terminated the de facto partnership in March 2018.

5. Despite the foregoing, and as set forth in further detail below, Defendant now insists that Plaintiff cannot use footage she shot with Defendant or alone without his permission and has otherwise refused to resolve matters related to the de facto partnership.

6. As a result, Plaintiff has been forced to bring this action, which seeks a declaratory judgment as to the parties' rights to certain footage, and an accounting.

## PARTIES, JURISDICTION AND VENUE

7. Plaintiff is an individual residing in Duchess County, New York.

8. Defendant Jonathan Bendis ("Defendant") is an individual residing in New York County, New York

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 2201(a).

10. This Court has personal jurisdiction over Defendant pursuant to N.Y. CPLR § 301.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1).

## GENERAL ALLEGATIONS

**Plaintiff's Initial Idea**

12. Plaintiff is a photographer. She is particularly known for her documentary photography focused on the music world.

13. Plaintiff had a longstanding desire to learn to play the drums, however, both as a child and an adult, she was told that drums were for boys or men, not girls or women.

14. Despite this, in 2008, Plaintiff decided that she wanted to learn to play drums.

15. She also decided that she wanted to document the process and interview accomplished drummers to find out why there are so few professional female drummers.

16. Initially, Plaintiff hoped to turn this into a short documentary, but after her first few shoots, she realized that she wanted to explore a broader topic – the role of a drummer in a band.

17. A few months after embarking on this project Plaintiff met Defendant. At that time and on multiple subsequent occasions, Defendant told Plaintiff that he had an extensive background in producing, directing and editing.

18. Plaintiff and Defendant immediately connected over a shared love of music and the drums.

**Plaintiff and Defendant Form a De Facto Partnership**

19. Based on this connection, in 2008 Plaintiff invited Defendant to collaborate with her in developing the film.

20. This relationship developed into a de facto partnership focused on creating a documentary about both Plaintiff's personal journey of learning to play the drums and, more generally, drummers' perspectives on music and songs (the "Project").

21. This de facto partnership is evidenced by the fact that Plaintiff and Defendant frequently referred to each other as "partners" or "creative partners" and committed to the other to complete specific steps to advance the Project.

22. They also both contributed money to the Project. Thus, between 2008 and 2018, Plaintiff incurred more than $218,000 in expenses related to the Project while Defendant claims to have incurred approximately $70,000 in such expenses.

23. The parties' de facto partnership is further evidenced by the fact that they consulted each other on the overall direction of the Project and its narrative, as well as their agreement that, in the event the Project was sold, they would share any profits.

24. Moreover, Plaintiff and Defendant each contributed significant time, effort, and knowledge toward the Project by jointly participating in more than 175 shoots.

25. At these shoots, Plaintiff and Defendant agreed on the placement and operation of the cameras, one of which was generally operated by Defendant while the others were unmanned while Plaintiff interviewed the subject.

26. Any copyright for footage shot jointly by Plaintiff and Defendant vested in both of them and such footage constitutes a joint work under the Copyright Act.

27. In addition, Plaintiff conducted more than 150 shoots without Defendant's presence. For these shoots, Plaintiff decided on the placement and operation of the cameras, which were unmanned or monitored by a friend, and also interviewed the subject and/or filmed and photographed the subject in performance.

28. Under the Copyright Act, Plaintiff is the sole author of such footage.

29. In addition, Plaintiff and Defendant worked together to create an extended "teaser" that they could show to potential interviewees.

**The Parties Unsuccessfully Try to Formalize Their Relationship**

30. In early-2012, Plaintiff and Defendant attempted to formalize their relationship.

31. Toward this end, Defendant had his attorney create a New York limited liability company called Another BF Deal LLC ("ABFD").

32. The name referred to both Plaintiff and Defendant with the "B" being for Bendis – Defendant's last name – and the "F" for Feinberg – Plaintiff's last name.

33. After the creation of this limited liability company, Defendant sent Plaintiff a short email stating "congrats! partner! [sic]."

34. On information and belief and despite Defendant's email, at no time between the creation of ABFD in March 2012 and the present was Plaintiff a member of ABFD.

35. Plaintiff and Defendant never finalized an operating agreement for ABFD.

**The Parties Use Releases Naming Defendant's Company as the Releasee**

36. In addition to creating ABFD, in or about March 2012, Defendant had his attorney create a form of release pursuant to which the subjects Plaintiff interviewed for the Project released ABFD from, among other things, claims for invasion of privacy and defamation.

37. These releases provide that ABFD "shall have the right to assign its rights hereunder to any person, corporation or entity."

38. Plaintiff and Defendant used this form of release in connection with numerous shoots even though Plaintiff was never a member of ABFD.

39. On information and belief, through words and/or conduct, Defendant, as the sole member of ABFD, assigned these releases to Plaintiff and Defendant's de facto partnership.

**Plaintiff Terminates the Parties' De Facto Partnership**

40. While, as set forth above, Plaintiff and Defendant both contributed time and resources to the Project, by late-2017 Plaintiff had become unhappy with Defendant's failure to complete certain tasks in connection with the Project and the fact that she was doing vastly more work than Defendant.

41. Thus, in late-2017, Plaintiff told Defendant in person that his lack of participation was not acceptable, and he needed to step up his contributions to the Project or Plaintiff would find another way forward.

42. Defendant did not do this.

43. As a result, in a long, heartfelt email dated March 6, 2018, Plaintiff told Defendant she was moving on and would be looking for other collaborators.

44. By this email as well as subsequent conduct, Plaintiff terminated her de facto partnership with Defendant.

5

45. Since then, Plaintiff has independently conducted more than 60 additional shoots.

**Defendant Has Obstructed Any Resolution**

46. Between 2018 and the present, Plaintiff, in writing and through representatives, has reached out to Defendant to resolve matters related to their de facto partnership.

47. Most recently, in March 2023, Plaintiff, through prior counsel, contacted Defendant offering among other things, to pay Defendant $20,000, reimburse him for documented costs and expenses in connection with the Project, and credit him as a consulting producer and camera operator if a film based on the Project is released.

48. Approximately nine months later, despite the fact that no film has been finished much less released, Defendant demanded a minimum of $225,000 for his work between 2008 and 2018. In his response, he further claimed that that he "retain[ed] 50% of the legal intellectual property rights . . ." in "the footage shot while [Defendant] was an active participant . . . ." between 2008 and 2019.

49. He further contends that Plaintiff cannot use any such footage shot between 2008 and 2019 without his permission.

## AS AND FOR A FIRST CAUSE OF ACTION
(Declaratory Judgement)

50. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 49 of the Complaint as if set forth in full herein.

51. Any copyright for footage shot jointly by Plaintiff and Defendant vested in both of them and such footage constitutes a joint work under the Copyright Act.

52. Any copyright for footage shot by Plaintiff without Defendant's participation vested in Plaintiff.

53. As either a joint author or a sole author of the footage, Plaintiff is free to use it without Defendant's permission.

54. Despite this, Defendant contends that Plaintiff cannot use any such footage shot between 2008 and 2019 without Defendant's permission.

55. As a result, there is an actual controversy for this Court to decide.

## AS AND FOR A SECOND CAUSE OF ACTION
(Accounting)

56. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 55 of the Complaint as if set forth in full herein.

57. Plaintiff and Defendant formed a de facto partnership.

58. Plaintiff terminated this de facto partnership on March 6, 2018.

59. Since then, Plaintiff has repeatedly attempted to resolve matters related to the de facto partnership.

60. Defendant has rebuffed these efforts and claimed without basis that he is entitled to far more than what he contributed.

61. As there is no other remedy at law and as a matter of equity, Plaintiff is entitled to an accounting which includes determining Plaintiff's rights to the releases executed in favor of ABFD which, on information and belief, through words and/or conduct, Defendant assigned to the de facto partnership.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant as follows:

(a) On the First Cause of Action, judgment finding Plaintiff is a joint author of any footage shot jointly by Plaintiff and Defendant;

(b) On the First Cause of Action, judgment finding Plaintiff is the sole author of any footage shot solely by Plaintiff;

(c) On the Second Cause of Action, an accounting for and distribution of the property of Plaintiff and Defendant's de facto partnership;

(d) Awarding Plaintiff all attorneys' fees, costs and disbursements incurred by her in connection with this action; and

(e) Awarding Plaintiff such other or further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all triable issues contained in the Complaint.

Dated: Brooklyn, New York
February 21, 2024

POLER LEGAL LLC

By:/s Emily A. Poler
    Emily A. Poler

15 MetroTech Center, 7th Floor
Brooklyn, NY 11201
(212) 675-9060
emily@polerlegal.com

*Attorneys for Plaintiff Erin Feinberg*

8